IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 1:21-cv-293-JTA |
| v. ) | (WO) |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), the claimant, Christopher Scott ("Scott"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Scott's claim for a period of disability and Disability Insurance Benefits ("DIB"). The Court construes Scott's brief in support of his Complaint (Doc. No. 15) as a motion for summary judgment and the Commissioner's brief in opposition to the Complaint as a motion for summary judgment (Doc. No. 16). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).

After careful scrutiny of the record and the motions submitted by the parties, the Court finds that Scott's motion for summary judgment is due to be DENIED, the

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

## I.  PROCEDURAL HISTORY AND FACTS

Scott was 50 years old at the time of his alleged disability onset date. (R. 706.)[2] He has a high school education and previously worked as a corrections officer and staff officer. (R. 23, 72.) He alleged a disability onset date of May 31, 2016, due to post-traumatic stress disorder ("PTSD"), chronic cervical strain, bilateral pes planus with planter fasciitis and heel spurs, coronary artery disease, and lumbar spondylolisthesis with degenerative joint disease. (R. 72-73, 702.)

On February 22, 2017, Scott protectively applied for a period of disability and DIB under Title II (42 U.S.C. §§ 401, *et seq*.). (R. 10, 140-41.) This application was denied initially on April 27, 2017, and Scott requested an administrative hearing. (R. 10, 71, 92.) Following an administrative hearing, the Administrative Law Judge ("ALJ") returned an unfavorable decision on June 22, 2018. (R. 10-24, 35.) Scott sought review by the Appeals Council, and it denied his request. (R. 1-6.) Thus, the hearing decision became the final decision of the Commissioner.[3]

Scott sought appellate review in federal district court and the court remanded the matter for further proceedings. (R. 744.) The Appeals Council remanded the matter to the

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case and are designated as "R." (*See* Doc. No. 17.)

[3] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

ALJ and the ALJ issued a new decision, after another administrative hearing, denying Scott's application. (R. 697-707, 753-754.) The Appeals Council declined jurisdiction of the ALJ's new decision. (R. 688.)

On April 19, 2021, Scott filed this civil action for judicial review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 15, 16, 21.) This matter is ripe for review.

## II. STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled

to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB must prove that he is disabled. *See* 20 C.F.R. § 404.1505. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ

finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number

of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV. ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ found that Scott has not engaged in substantial gainful activity since May 31, 2016, the alleged onset date of disability, and that he suffers from the following impairments that significantly limit his ability to perform basic work activities: PTSD, depression, back and neck disorder, left shoulder disorder, obesity and bilateral foot disorder. (R. 699.) Nevertheless, the ALJ concluded that Scott's severe impairments do not meet or medically equal the severity of impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (R. 700.)

After consideration of the entire record, the ALJ determined that Scott retains the RFC to perform light work[4] as defined in 20 C.F.R. § 404.1567(b), except

> … [he] can never climb ladders, ropes or scaffolds. [He] can occasionally climb ramps and stairs. [He] can frequently balance, stoop, kneel, crouch, and crawl. [He] can perform simple and routine tasks and some detailed but uninvolved instructions consistent with reasoning level one and two occupations. [He] can make simple work related decisions. He can interact with supervisors and coworkers occasionally. [He] can work around the public but he should avoid direct interaction with them. [He] can deal with occasional changes in a routine work setting.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R § 404.1567(b).

6

(R. 701.)  In accordance with this RFC and having the benefit of testimony from a vocational expert ("VE"), the ALJ determined that Scott was precluded from performing any past relevant work.  (R. 706.)  The ALJ also found that based upon Scott's age, education, work experience and RFC, there are jobs that exist in "significant numbers in the national economy" that he can perform, and thus he was not disabled as defined by the Act.  (R. 706-707.)  The ALJ further found that Scott could work as a bench assembler, bottling line attendant, and office helper.  (R. 707.)  The ALJ concluded that Scott had not been under a disability from May 31, 2016, through January 28, 2020, the date of the ALJ's decision.  (R. 707.)  The ALJ found that based on the application for a period of disability and DIB filed on February 22, 2017, Scott is not disabled under sections 216(i) and 223(d) of the Social Security Act.  (*Id*.)

## V.     DISCUSSION

Scott raises two issues on appeal.  (Doc. No. 15.)  First, Scott argues the ALJ failed to properly address the disability determination of the United States Department of Veterans Affairs ("VA").  Second, Scott argues the ALJ failed to account for any limitations resulting from his left shoulder disorder in the RFC.

In response, the Commissioner argues that the ALJ properly considered the rating decision from the VA. (Doc. No. 16.)  The Commissioner also argues that the ALJ properly included limitations for Scott's shoulder impairment in the RFC.  The Commissioner concludes that substantial evidence supports the final decision, and the proper legal standards were applied.

The Court addresses each argument below.

A. Disability Determination Made by the Department of Veterans Affairs

Scott argues the ALJ's evaluation of the VA disability ratings are not based on substantial evidence. He also argues the ALJ failed to address the specific ratings he received and the corresponding impairments. The Court disagrees.

It is well-established in the Eleventh Circuit that "the V.A.'s disability rating ... is evidence that should be given great weight." *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984) (citations omitted). " 'Great weight' does not mean controlling, but 'the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination,' especially when the VA gives a 100% disability rating." *Beshia v. Comm'r of Soc. Sec.*, 328 F. Supp. 3d 1341, 1346-47 (M.D. Fla. 2018) (citing *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 904 (11th Cir. 2016)). "[T]he VA's disability determination relies on different criteria than the SSA's determination[,] [b]ut that does not mean that the ALJ can summarily ignore the VA's determination nor give it 'little weight.' " *Brown-Gaudet-Evans,* 673 F. App'x at 904. "[N]ot addressing the merits of a 100% VA disability rating – particularly where based on the same underlying medical conditions at issue in the SSA proceedings"— constitutes legal error. *Beshia*, 328 F. Supp. 3d at 1347 (citing cases).

In this case, Scott received a 90% service connection disability rating on February 22, 2017. (R. 243.) But, in April 2019, he received a 100% service connection disability rating. (R. 891). The ALJ addressed these ratings in his hearing decision, stating:

> [Scott] has a service-connected disability rating from the VA. He currently has a 100% service connected disability rating due to a combination of medical and psychiatric conditions (Exhibit 13F). [Scott] was previously

8

> rated at 90% service connected (Exhibit 3F). The undersigned gives significant weight to the finding of the VA that [Scott]'s impairments can reasonably be expected to cause some functional limitations. However, the undersigned gives little weight to any VA opinion that [Scott] is disabled, to any opinions set forth by the VA in C&P examinations, and to any specific disability rating (Exhibit 10F). VA opinions are based on a different standard than is used by the Social Security Administration and they are not consistent with the objective medical evidence of record, [Scott]'s functioning, or [Scott]'s positive response to treatment. For example, [Scott] has a 50% disability rating from the VA for sleep apnea even though his sleep apnea is well controlled on CPAP and does not cause significant functional limitations. His mental status examination findings do not support disabling mental health limitations as well.

(R. 705-706.)

The Court finds the ALJ seriously considered and closely scrutinized the VA decision rating as required. The ALJ stated the particular weight he gave to the VA's findings regarding Scott's impairments causing some functional limitations, the VA's opinion that Scott was disabled, the VA's opinions set forth in examinations, and any VA disability ratings. The ALJ correctly noted that a disability decision by the VA is based on different standards. *See* 20 C.F.R. § 404.1504 ("Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled ... is based on its rules, it is not binding on us and is not our decision about whether you are disabled ... under our rules."). Further, the ALJ found that the VA opinions were not consistent with the objective medical evidence, Scott's functioning or Scott's positive response to treatment and provided two examples of such inconsistency: Scott's sleep apnea and his mental status. The Court finds no reversible error. *See Grissett v. Comm'r of Soc. Sec.*, 695 F. App'x 497, 502 (11th Cir. 2017) ("Because the ALJ considered the VA

9

decision, expressly stated the weight he was giving to that decision, and adequately explained his reasons for doing so, we find no error in this regard.").

B.      RFC Assessment

Scott contends the ALJ's RFC assessment fails to account for any limitations relating to his left shoulder disorder. Scott asserts that since the ALJ found his left shoulder disorder was a severe impairment, the ALJ was required to account for it in the RFC by including a postural limitation on reaching. Scott concludes the ALJ's failure is reversible error.

The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). "The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.' " *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* Social Security Ruling 96-6p (stating that the ALJ must treat the findings of state agency medical consultants as expert opinion evidence of non-examining sources).

In addition to assessing a claimant's medical evidence, the ALJ is responsible for determining a claimant's RFC. *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (citing 20 C.F.R. § 404.1546(c)). A claimant's RFC is an

10

administrative finding as to the most the claimant can do despite his limitations and is based on all the relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238; 20 C.F.R. § 404.1545. "Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence." *Talton v. Kijakazi*, No. CV 20-00543-B, 2022 WL 822158, at *6 (S.D. Ala. Mar. 17, 2022) (citing *Flynn v. Heckler*, 768 F.2d 1273, 1274 (11th Cir. 1985)). If the ALJ's determination of the claimant's RFC is supported by substantial evidence, then the court cannot overturn the conclusion reached by the ALJ. *Shue v. Comm'r of Soc. Sec.*, 817 F. App'x 906, 908 (11th Cir. 2020) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); *see also* 42 U.S.C. § 405(g).

The ALJ found Scott's left shoulder disorder to be a severe impairment, but stated that it did not meet or medically equal the criteria of a listed impairment. (R. 700.) The ALJ noted that Scott's "back, neck, left shoulder, and foot impairments do not meet the requirements of a musculoskeletal impairment in listing 1.00, including listings 1.02 and 1.04. There is no evidence in the record, for example, of an inability to ambulate effectively … [nor] an inability to perform fine and gross movement effectively…." (R. 700.) The ALJ summarized the evidence in the record relating to Scott's shoulder, noting that Scott "has a history of intermittent shoulder pain dating back to the 1990s." (R. 702.)

> [Scott] aggravated his shoulder around September 2015 lifting heavy objects. [Scott]'s shoulder was doing better with conservative treatment (injections and physical therapy) until he injured it trying to pick up a plow and attaching it to his tractor. [Scott] was subsequently diagnosed with left shoulder impingement syndrome and biceps tendinitis. He had surgery on his left shoulder in January 2016. [Scott] did well post-operatively (Exhibit 4F). By March 2016, [Scott] had good function in his shoulder and he was allowed

11

>to return to desk/sedentary work. [Scott] continued to improve and he was released to full activity in May 2016. He was going to the gym and using machines to strengthen his arm including shoulder presses, bench press and lateral raises with approximately 40 pounds per arm. [Scott] denied any pain and he had no other complaints. In June 2016, he reported doing some remodeling on his home and gardening (Exhibit 9F). [Scott] told his primary care provider in October 2016 that his shoulder was feeling good (Exhibit 6F). He was working out regularly and working on his backyard. [Scott] did complain to his primary care provider of some ongoing neck pain in 2016 but this improved with physical therapy. [Scott] has not complained of persistent neck or shoulder pain since 2016.

(R. 702-03.)  Before discussing the evidence of record, including medical findings, examination results, physicians' opinions, and lay opinion evidence, the ALJ found Scott had the RFC to perform light work, except with additional limitations, including in pertinent part, that Scott "can never climb ladders, ropes or scaffolds[;]" "can occasionally climb ramps and stairs[;]" "can frequently balance, stoop, kneel, crouch, and crawl[;]" and "can perform simple and routine tasks and some detailed but uninvolved instructions consistent with reasoning level one and two occupations."  (R. 701.)  The ALJ noted that he limited Scott to

>light work with additional postural restrictions to account for his neck, left shoulder, back, foot disorders, and weight. The ability to perform a reduced range of light work is supported by [Scott]'s treatment records, which document a history of sporadic and conservative treatment, and his activities of daily living. The record documents minimal complaints of pain after 2016. Although [Scott] did have surgery on his left shoulder in January 2016, he recovered quickly and he was released to full duty work in May 2016, just a few months after the surgery. The undersigned gives great weight to the opinion of [Scott]'s treating providers releasing him to full duty work (Exhibit 4F), as it is consistent with the objective evidence of record and other opinions in the record.

(R. 703.)  The ALJ also noted that Scott "reported going to the gym and lifting 40 pounds with each arm, remodeling his house, lifting a plow for his tractor, and gardening."  (R.

703.) The ALJ further noted that "There is no evidence in the record that [Scott] sought treatment specifically for neck, back, shoulder or foot pain in 2019, he has not recently requested or been referred to any specialists for treatment of neck, back, shoulder or foot pain, and he has not required updated imaging." (R. 703.)

Contrary to Scott's assertion,[5] the ALJ was not required to incorporate limitations for his left shoulder disorder merely because the ALJ found it to be a severe impairment. "Severe impairments do not necessarily result in specific functional limitations .... [and i]f no specific functional limitations from a severe impairment exist, the ALJ need not include a corresponding limitation for that impairment in the RFC." *Owens v. Colvin*, Case No. 3:15-cv-409-J-JBT, 2015 WL 12856780, at *2 (M.D. Fla. Oct. 15, 2015) (citing *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009) (per curiam). *See Davis–Grimplin v. Commr, Soc. Sec. Admin.*, 556 F. App'x 858, 863 (11th Cir. 2014) (per curiam)); *Mancini v. Commisioner of Soc. Sec.,* No. 2:19-CV-798-JLB-NPM, 2021 WL 1087270, at *1 (M.D. Fla. Mar. 22, 2021) ("[T]he Court does not accept the proposition that a specific limitation must always be attributed to a "severe impairment."); *Summerhill v. Comm'r of Soc. Sec. Admin.*, Case No. 3:20-05055-CV-RK, 2021 WL 4432479, at *4

---

[5] Scott relies on *Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898-99 (11th Cir. 2010) to argue that "all severe impairments are to be incorporated into the RFC finding." (Doc. No. 15 at 13.) In *Raduc*, the Eleventh Circuit found that an ALJ erred by finding the claimant's IBS to be a severe impairment but failing to include limitations caused by the IBS in the RFC assessment and ignoring treating records for IBS. *Id.* at 898-99. However, that case does not require remand here. First, that case does not stand for the conclusion that an ALJ must include limitations in an RFC based on any particular severe impairment, as explained above. Second, unlike here, there was specific testimony and an opinion from a treating physician in *Raduc* that the claimant was limited by her IBS, all of which that ALJ ignored. *Id.* There is no such evidence here. Thus, *Raduc* does not control here.

13

(W.D. Mo. Sept. 27, 2021) (citation omitted) (finding an ALJ did not err where the ALJ found the claimant had several impairments, but did not include any limitations related to those severe impairments in his RFC determination, because "[a]n ALJ is not required to list and reject every possible limitation"); *Fortner v. Astrue*, No. 4:12-CV-00986-RDP, 2013 WL 3816551, at *6 (N.D. Ala. July 22, 2013) (citation omitted) ("The ALJ may thus "incorporate" a claimant's severe impairments into an RFC by acknowledging and weighing those impairments in his report, without the impairments necessarily resulting in an imposition of impairment-specific work limitations in the RFC.").

This case is procedurally similar to *Davis-Grimplin v. Comm'r, Soc. Sec. Admin.*, 556 F. App'x 858, 860 (11th Cir. 2014). In *Davis-Grimplin*, the district court had previously remanded the case in part so the ALJ could identify the functional limitations caused by Davis's bilateral carpal tunnel syndrome. *Davis-Grimplin*, 556 F. App'x at 860, n.3. After the case returned to the district court from the remand, the district court and the Eleventh Circuit found that the ALJ complied with the Remand Order because "[t]he ALJ had ample evidence on which to conclude that Davis did not have functional limitations of her hands notwithstanding that her bilateral carpal tunnel syndrome is a severe impairment." *Id.* at 863. Thus, the Eleventh Circuit concluded that substantial evidence supported the ALJ's denial of Davis's disability applications. *Id.*

Likewise, the Court finds here that the ALJ's RFC assessment is supported by substantial evidence.[6] The ALJ's specific statement that he "limited Scott to light work with additional postural restrictions to account for his neck, left shoulder, back, foot disorders, and weight" (R. 703), demonstrates that the ALJ sufficiently considered Scott's left shoulder disorder, singly and in combination, with his other impairments in developing the RFC. In addition, the ALJ's decision clearly indicates that he considered the medical evidence of record regarding Scott's left shoulder impairment, the minimal complaints of pain after 2016, and the medical opinions regarding his return "to full activities" in relation to his left shoulder's improvement, functioning, and ability to exercise with weights. (R. 703, 704.) The ALJ's decision further indicates that he considered that no evidence in the record shows that Scott sought treatment for his shoulder pain in 2019, he had not recently requested or been referred to any specialists for treatment of his shoulder, and he had not required updated imaging. (R. 703.) The ALJ stated the weight he gave to the opinion of Scott's treating providers "releasing him to full duty work." (R. 703.)

Moreover, state agency medical and psychological consultants are "highly qualified and experts in Social Security disability evaluations." 20 C.F.R. § 404.1513a(b)(1). The record shows that the ALJ considered the state agency consultants' opinions pertaining to Scott's ability to perform a range of medium work, but "reduced the exertional level from medium to light to account for [Scott's] weight and the findings, albeit minimal, in updated

---

[6] Scott does not challenge the ALJ's recitation of the medical evidence, nor does he challenge the ALJ's treatment of his subjective complaints of any opinion evidence. Hence, the substance of the RFC discussion is unchallenged.

treatment records." (R. 703-704.) The ALJ gave "great weight" to the opinion of Dr. George Hall, a state agency medical consultant, because the opinion "is consistent with the medical evidence of record and he has program knowledge." (R. 704.) Remarkably, none of the consultants opined that Scott was unable to reach frequently or was limited in reaching due to his left shoulder disorder. (R. 72-85.)

"Because the ALJ stated the weight given to the medical opinions and enunciated the grounds for his decision, his choosing not to mention [Scott's left shoulder disorder] in [his discussion of the RFC] did not constitute a failure to create an RFC that was 'reasonable and supported by substantial evidence.'" *Fortner*, 2013 WL 3816551, at *7 (citations omitted). The ALJ sufficiently discussed Scott's left shoulder disorder and his full recovery after surgery and physical therapy, and it is apparent why no reaching limitations — aside from limiting Scott to frequent reaching — were included in the RFC. (R. 703.) Thus, despite Scott's arguments to the contrary, the Court finds that substantial evidence supports the ALJ's RFC finding.

The Court is unpersuaded by Scott's argument that "[s]ince reaching is omitted from the RFC, the ALJ has implicitly found that [Scott] can constantly reach, as the RFC is the most [Scott] can do despite his impairments …." (Doc. No. 15 at 13.) The jobs identified by the ALJ and VE that Scott would be able to perform are bench assembler, bottling line attendant, and office helper. (R. 707, 725.) The functional requirements of these jobs involve only frequent reaching, <u>not</u> constant reaching. *See* DOT § 706.687-010, 1991 WL 679074 (assembler); DOT § 920.687-042, 1991 WL 687971 (bottling line attendant); DOT § 239.567-010, 1991 WL 672232 (office helper). *See, e.g. Jones v. Comm'r of Soc. Sec.*,

492 F. App'x 70, 73 (11th Cir. 2012) (ALJ's omission of driving impairment was harmless because the identified jobs did not involve driving). Markedly, "there is no requirement that the frequent reaching must be bilateral," and there was no limitation on Scott's ability to reach with his right shoulder which is his dominant side since he testified he is right-handed.[7] *Shawn W., v. Kijakazi*, No. 1:20-CV-1513 (ATB), 2022 WL 4094939, at *20 (N.D.N.Y. Sept. 7, 2022).

     Finally, Scott does not meaningfully argue or present facts demonstrating he had any allegedly reduced abilities from his left shoulder disorder and does not demonstrate how such allegedly reduced abilities resulted in functional restrictions omitted from the ALJ's RFC determination. *See Lenowsky v. Kijakazi*, Case No. 8:20-cv-1004-CPT, 2021 WL 3879047, at *3 (M.D. Fla. Aug. 31, 2021) (citation omitted) (citing 20 C.F.R. §§ 404.1520, 416.920). Scott "bears the burden of showing 'the effect of [an] impairment on [his] ability to work.' " *Id*. (first alteration in original) (quoting *Smith v. Comm'r of Soc. Sec*., 501 F. App'x 875, 878 (11th Cir. 2012) (per curiam)). Scott "must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec*., 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam). Scott has failed to carry his burden.

---

[7] (R. 40.)

## VI. CONCLUSION

After review of the administrative record, and considering all of the arguments, the Court finds the Commissioner's decision to deny Scott disability is supported by substantial evidence and is in accordance with applicable law. Accordingly, it is hereby

ORDERED as follows:

1. The claimant's motion for summary judgment (Doc. No. 15) is DENIED.

2. The Commissioner's motion for summary judgment (Doc. No. 16) is GRANTED.

3. The decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

DONE this 28th day of February, 2023.

*/s/ Jerusha J. Adams*
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE